**COMMERCE AND INDUSTRY INSURANCE COMPANY**
175 WATER STREET
NEW YORK, N.Y. 10038



## STORAGE TANK THIRD-PARTY LIABILITY, CORRECTIVE ACTION AND CLEANUP POLICY

### DECLARATIONS

NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT AND ALSO SHALL REDUCE THE SEPARATE LIMIT OF LIABILITY AVAILABLE TO PAY LEGAL DEFENSE COSTS COVERED BY THIS INSURANCE.

**POLICY NUMBER:** 003033680

**Item 1. NAMED INSURED:** G. Tyson Hopkins Assoc LLC DBA
Topsail Island Marina

**ADDRESS:** 5619 33rd Street North
Arlington, VA 22207

**Item 2. POLICY PERIOD:** **FROM** 05/09/21 **TO** 05/09/22
12:01 AM Standard Time at the Address of the Named Insured shown above

**Item 3. LIMIT OF LIABILITY:** $ 1,000,000 **EACH INCIDENT**

$ 1,000,000 **AGGREGATE LIMIT**

**AGGREGATE DEFENSE EXPENSE LIMIT**

**Item 4. DEDUCTIBLE:** $ 5,000

**Item 5. COVERED LOCATION(S):** See Storage Tank Schedule

**Item 6. COVERED UNDERGROUND STORAGE TANK SYSTEM(S) AND/OR ABOVEGROUND STORAGE TANK(S):** See Storage Tank Schedule

**Item 7. RETROACTIVE DATE:** See Storage Tank Schedule

**Item 8. POLICY PREMIUM:** $765.00

Premium for Certified Acts of Terrorism Coverage Under TRIA 2002:
Not Applicable, Coverage Rejected by Insured

**BROKER:** Chamber Insurance Agency Services

**By** _____

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

Case 7:24-cv-00584-FL    Document 24-5    Filed 06/06/25    Page 1 of 40    CIT0001

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (04/13)

C000109

# COMMERCE AND INDUSTRY INSURANCE COMPANY

## STORAGE TANK THIRD-PARTY LIABILITY, CORRECTIVE ACTION AND CLEANUP POLICY

**NOTICE**: THIS POLICY HAS CERTAIN PROVISIONS AND REQUIREMENTS UNIQUE TO IT AND MAY BE DIFFERENT FROM OTHER POLICIES THE NAMED INSURED MAY HAVE PURCHASED. THIS IS A CLAIMS-MADE-AND-REPORTED POLICY WITH RESPECT TO THIRD PARTY OFF-SITE LIABILITY COVERAGE AND CLEANUP COVERAGE FOR ABOVEGROUND STORAGE TANKS, AND A RELEASE-REPORTED FORM WITH RESPECT TO CORRECTIVE ACTION COVERAGE FOR UNDERGROUND STORAGE TANKS. THIS POLICY IS SITE-SPECIFIC: ONLY SCHEDULED TANKS AT SCHEDULED LOCATIONS ARE COVERED.

PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE THE INSURED'S RIGHTS, DUTIES, AND WHAT IS AND IS NOT COVERED. VARIOUS PROVISIONS THROUGHOUT THIS POLICY RESTRICT OR EXCLUDE COVERAGE.

Defined terms appear in **bold face** type.

In consideration of the payment of the premium, in reliance upon the statements in the Declarations and Application made part hereof and subject to all the terms of this Policy, the Company agrees with the **Named Insured** as follows:

## I. INSURING AGREEMENT

### COVERAGE A - THIRD PARTY BODILY INJURY AND PROPERTY DAMAGE

Subject to the applicable limits of liability and the deductible, the Company agrees to pay **Loss** on behalf of the **Insured** that the **Insured** is legally obligated to pay as a result of **Claims** first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or during the Extended Reporting Period if applicable, for **Pollution Conditions Emanating From** the locations designated in Item 5 of the Declarations which result beyond the boundaries of such locations in **Bodily Injury** or **Property Damage**. The **Pollution Conditions** must be unexpected and unintended from the standpoint of the **Insured** and must commence on or after the Retroactive Date shown in Item 7 of the Declarations.

### COVERAGE B - CORRECTIVE ACTION DUE TO UNDERGROUND STORAGE TANK RELEASES

Subject to the applicable limits of liability and the deductible, the Company agrees to pay on behalf of the **Insured** reasonable and necessary costs that the **Insured** is legally obligated to pay for **Corrective Action** due to **Confirmed Releases** resulting from **Pollution Conditions** from an **Underground Storage Tank System** which are unexpected and unintended from the standpoint of the **Insured**. The **Pollution Conditions** must commence on or after the Retroactive Date shown in Item 7 of the Declarations. **Claims** reporting a **Confirmed Release** must be first reported to the Company, in writing, during the **Policy Period** or during the Extended Reporting Period, if applicable.

### COVERAGE C - CLEANUP DUE TO ABOVEGROUND STORAGE TANK RELEASES

Subject to the applicable limits of liability and the deductible, the Company agrees to pay on behalf of the **Insured** reasonable and necessary costs that the **Insured** is legally obligated to pay for **Cleanup** of **Pollution Conditions** from an **Aboveground Storage Tank**, as a result of a **Governmental Order**. The **Pollution Conditions** must be unexpected and unintended from the standpoint of the **Insured** and must commence on or after the Retroactive Date shown in Item 7 of the Declarations. During the **Policy Period**, or during the Extended Reporting Period, if applicable, both the **Governmental Order** must first issue against the **Named Insured** and the **Claim** reporting the **Governmental Order** must be first reported to the Company, in writing.

### COVERAGE D - DEFENSE

56101 (8/09)
CI4144

© 2001  All rights reserved

CIC000110

To have the right and duty to defend the **Insured** against:

**A.** Any **Claims** for **Loss** to which **Coverage A** applies; and

**B.** Any civil or administrative proceedings or suits which seek to impose a legal obligation upon the **Insured** to undertake **Corrective Action** or **Cleanup**, but the civil or administrative proceedings or suits must result from **Claims** reporting a **Confirmed Release** to which **Coverage B** applies, or reporting a **Governmental Order** to which **Coverage C** applies.

Our duty to defend will cease at the earlier of the following times:

1. When the "Aggregate Defense Expense Limit" as described in Section **V. LIMIT OF LIABILITY AND DEDUCTIBLE**, is exhausted by the payment of costs, charges and expenses incurred by the Company in the defense, investigation, or adjustment of **Claims**, proceedings or suits to which this **Coverage D - Defense**, applies; or

2. When the "Aggregate Limit" as described in Section **V. LIMIT OF LIABILITY AND DEDUCTIBLE**, is exhausted by the payment of **Loss** or costs for **Corrective Action** or **Cleanup**.

**II. CLAIMS PROVISIONS**

    **A.** It is a condition precedent to coverage under this Policy that:

        1. NOTICE OF CLAIM:

        **Coverage A:** In the event of a **Claim** under **Coverage A**, the **Insured** shall give the Company's representative as identified in this paragraph written notice as soon as possible but in any event no later than seven (7) days after receipt of the **Claim** by the **Insured**.

        **Coverage B:** In the event that a **Pollution Condition** has taken place which the **Insured** has verified as a **Confirmed Release**, the **Insured** must submit a **Claim** under **Coverage B**, in writing, as soon as possible but in any event no later than seven (7) days after verifying the **Confirmed Release**.

        **Coverage C:** In the event the **Insured** is issued a **Governmental Order** requiring **Cleanup**, the **Insured** must submit a **Claim** under **Coverage C**, in writing, as soon as possible but in any event no later than seven (7) days after receipt of the **Governmental Order**.

        All **Claims** under **Coverage A**, **Coverage B** and **Coverage C** shall be reported to:

            Manager, Pollution Insurance Products Dept.
            AIG Property Casualty Claims, Inc
            Attn.: CID
            101 Hudson Street, 31st Floor
            Jersey City, NJ 07302
            Fax: 866-260-0104
            Email: severityfnol@aig.com

        or other address(es) as substituted by the Company in writing.

        2. When a **Claim** under **Coverage A**, **Coverage B** or **Coverage C** has been made, the **Insured** must forward to the Company as soon as practicable after receipt, or receipt by its representative or agent, of the following:

           (a) All technical reports, laboratory data, field notes or any other documents generated by or on behalf of the **Insured** to investigate or abate a **Pollution Condition** or to implement **Corrective Action** or **Cleanup**.

56101 (8/09)
CI4144

© 2001 All rights reserved

For **Claims** under **Coverage B**, the **Insured** shall also forward documentation of the release detection tests or procedures, such as system tightness tests or site checks, undertaken to investigate a suspected **Pollution Condition** and verify that a **Confirmed Release** has taken place.

(b) All correspondence between the **Insured** and any third party claimant, including but not limited to any **Implementing Agency**;

(c) All demands, summons, notices or other processes or papers from a court of law, administrative agency or an investigative body;

(d) All expert reports, investigations and data collected by experts retained by the **Insured** whether or not the **Insured** intends to use the material for any purpose; and

(e) Any other information developed or discovered by the **Insured** concerning the **Claim** whether or not deemed by the **Insured** to be relevant to the **Claim**.

**B.** No costs, charges and expenses incurred in the defense, investigation, or adjustment of **Claims**, proceedings or suits to which Section I. **Coverage D - Defense** applies shall be incurred without the Company's consent. No costs of preparing, developing, modifying or implementing a corrective action plan undertaken as part of a covered **Corrective Action**, shall be incurred without the Company's consent.

**C.** The **Insured** shall not admit or assume any liabilities or settle any **Claims** without the Company's consent.

**D.** The Company may at its discretion investigate any **Pollution Condition** or **Confirmed Release** and settle any **Claim** under **Coverage A** for **Loss** or any suit or proceeding under **Coverage B** for **Corrective Action** or under **Coverage C** for Cleanup.

**E.** The **Insured**, on demand of the Company, shall promptly reimburse the Company for any element of the **Loss** or costs for **Corrective Action** or Cleanup falling within the **Insured's** deductible, as described in Section **V. LIMIT OF LIABILITY AND DEDUCTIBLE.**

**F.** The **Insured** will cooperate with the Company to the fullest extent possible by providing the assistance necessary to adjust, investigate and defend the **Claim** under **Coverage A, Coverage B** and/or **Coverage C.** The **Insured** agrees to provide the Company free access to interview any employee, agent, representative or independent contractor of the **Insured** and to review any of the **Insured's** documents concerning the **Claim**.

**G.** The Company shall have the right but not the duty to participate in decisions regarding **Corrective Action** or Cleanup, or to assume direct control over all aspects of such **Corrective Action** or Cleanup, and the adjustment of any **Claim** under **Coverage A, Coverage B** or **Coverage C**, up to the limit of liability. In the case of the exercise of this right, the **Insured,** on demand of the Company, shall promptly reimburse the Company for any element of **Loss** or costs for **Corrective Action** or Cleanup the Company advances falling within the **Insured's** Deductible, pursuant to Section **V.**

**H.** The **Insured** shall cooperate with the Company to the fullest extent possible by providing the assistance necessary to adjust, investigate and defend the **Claim** and or the **Governmental Order**, and shall participate in discussions regarding **Corrective Action** or Cleanup, or performance of a **Corrective Action** or Cleanup should the Company exercise its rights under Paragraph **G.** of this Section.

## III. DEFINITIONS

**A. Aboveground Storage Tank** means a device:

1. That meets the definition of a tank, as follows: a stationary device designed to contain an accumulation of hazardous waste or other waste product or any product, which is constructed

56101 (8/09)
CI4144

© 2001 All rights reserved

JDC000112

primarily of non-earthen materials (e.g., wood, concrete, steel, plastic) which provide structural support;

    2. That is situated in such a way that the entire surface area of the tank is completely above the plane of the adjacent surrounding surface and the entire surface area of the tank (including or excluding the tank bottom) is able to be visually inspected; and

    3. That is on, within, or under a location designated in Item 5 of the Declarations and that is designated in Item 6 of the Declarations.

**B. Bodily Injury** means physical injury, or sickness, disease, mental anguish or emotional distress when accompanied by physical injury, sustained by any person, including death resulting therefrom, caused by a **Pollution Condition Emanating From** the locations designated in Item 5 of the Declarations.

**C. Claim** means:

    1. Under **Coverage A**, a written demand by a third party that is received by the **Named Insured** seeking a remedy and alleging liability or responsibility on the part of the **Named Insured** for **Loss**.

    2. Under **Coverage B**, a notice to the Company written by or on behalf of the **Named Insured** reporting a **Confirmed Release**.

    3. Under **Coverage C**, a notice to the Company written by or on behalf of the **Named Insured** reporting receipt of a **Governmental Order** which was first issued against the **Named Insured** during the **Policy Period** or **Extended Reporting Period**, if applicable.

**D. Cleanup** means:

    1. Response, abatement, investigative, and removal actions resulting from **Pollution Conditions** from one or more **Aboveground Storage Tank(s)**.

    2. The cleanup, pursuant to a **Governmental Order** from the **Implementing Agency** and with the prior written approval of the Company, of a **Pollution Condition** from one or more **Aboveground Storage Tank(s)**, including the preparation, development, modification and implementation of a corrective action plan, and the monitoring, evaluation and reporting of the results of the implementation of such plan.

**E. Confirmed Release** means a **Pollution Condition** from an **Underground Storage Tank System** that has been investigated and confirmed by or on behalf of the **Insured** utilizing a system tightness check, site check or other procedure approved by the **Implementing Agency** in accordance with 40 C.F.R. 280.52 or another applicable federal or state regulation or state statute.

**F. Corrective Action** means:

    1. Response, abatement, investigative, and removal actions resulting from a **Confirmed Release** as legally required by Subpart F of the federal underground storage tank regulations, 40 C.F.R. 280.60 through 280.66, and 280.72, or as legally required by other applicable federal regulations or by other applicable regulations promulgated by a state under an underground storage tank program approved by the federal Environmental Protection Agency in accordance with Section 9004 of the Resource Conservation and Recovery Act of 1976, as amended;

    2. The cleanup, pursuant to a written order from the **Implementing Agency** and with the prior written approval of the Company, of **Regulated Substances** in soil or groundwater due to a **Confirmed Release**, including the preparation, development, modification and implementation of a "corrective action plan" as defined in 40 C.F.R. 280.66, and the monitoring, evaluation and reporting of the results of the implementation of such plan.

56101 (8/09)
CI4144

© 2001 All rights reserved

CIC000113

**G.** **Emanating From** means directly and immediately releasing, dispersing or escaping from and originating from an **Aboveground Storage Tank** or an **Underground Storage Tank System** that is on or within a location designated in Item 5 of the Declarations.

**H.** **Environmental Laws** means one or more of the following statutes, any amendments thereto, any regulations promulgated thereunder, and any similar statutes, amendments or regulations of any state or province or political subdivision thereof, of the United States or Canada in effect at the commencement of the **Policy Period**: Comprehensive Environmental Response Compensation, and Liability Act of 1980 (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), 42 U.S.C. 9601-9675; Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. 6901-6992K; Federal Water Pollution Control Act, 33 U.S.C. 1251-1387.

**I.** **Governmental Order** means an order, including any governmental directive, lawfully issued against the **Insured** by an **Implementing Agency** or other governmental agency or court having jurisdiction over the locations designated in Item 5 of the Declarations and acting under authority granted by **Environmental Laws**.

**J.** **Implementing Agency** means the federal Environmental Protection Agency (E.P.A.) or a state or local agency having jurisdiction over the **Aboveground Storage Tank(s)** pursuant to applicable **Environmental Laws**, or over the **Underground Storage Tank System(s)** pursuant to an underground storage tank program approved by the federal E.P.A. in accordance with Section 9004 of the Resource Conservation and Recovery Act of 1976, as amended, or other applicable statute.

**K.** **Insured** means the **Named Insured**, and any director, officer, partner or employee thereof while acting within the scope of his/her duties as such.

**L.** **Loss** means monetary awards or settlements of compensatory damages arising from **Bodily Injury** or **Property Damage**.

**M.** **Named Insured** means the person or entity designated as such in Item 1 of the Declarations.

**N.** **Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of:

1. Cancellation of this Policy; or

2. With respect to particular locations designated in Item 5 of the Declarations:

   (a) The deletion of such location(s) from this Policy by the Company; or

   (b) The sale, giving away or abandonment of such location(s), or the sub-leasing of such location(s), unless the sub-lease has been approved in writing by the underwriter prior to the commencement of the sub-lease.

**O.** **Pollution Condition** means any spilling, leaking, emitting, discharging, escaping or leaching of:

1. The contents of an **Aboveground Storage Tank**; or

2. One or more **Regulated Substances** from an **Underground Storage Tank System**;

into groundwater, surfacewater or surface or subsurface soils. The entirety of the same, interrelated, associated, repeated or continuous episodes of **Pollution Conditions** from the same **Aboveground Storage Tank** or **Underground Storage Tank System** shall be deemed to be a single **Pollution Condition** commencing at the time of the initial **Pollution Condition**.

**P.** **Property Damage** means:

56101 (8/09)
CI4144

© 2001  All rights reserved

C000114

1. Physical injury to or destruction of tangible property of parties other than the **Insured** including the resulting loss of use thereof;

2. Loss of use of tangible property of parties other than the **Insured** that has not been physically injured or destroyed;

provided that such **Claims** for physical injury or destruction, or loss of use are caused by a **Pollution Condition Emanating From** the locations designated in Item 5 of the Declarations.

**Q. Regulated Substance** means:

1. Petroleum, including crude oil or any fraction thereof that is liquid at standard conditions of temperature and pressure;

2. Hazardous substance as defined in Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), except that for the purposes of this definition, hazardous waste regulated under Subtitle C of the Resource Conservation and Recovery Act of 1976, as amended, is NOT included in this definition of **Regulated Substance**.

**R. Underground Storage Tank System** means a tank or tanks operated by the **Insured**, including any connected underground piping, underground ancillary equipment and containment system:

1. That are on, within, or under a location designated in Item 5 of the Declarations and that are designated in Item 6 of the Declarations; and

2. That are used solely to contain **Regulated Substances**.

Each tank in an **Underground Storage Tank System**, including associated underground piping connected to the tank, must have at least ten (10) percent of its volume beneath the surface of the ground.

## IV. EXCLUSIONS

This insurance does not apply to **Claims**:

**A.** Arising from a **Pollution Condition** existing prior to the inception of this Policy, if any employee of the **Named Insured** responsible for environmental affairs, control or compliance or any manager, supervisor, officer, director or partner of the **Named Insured** knew or could have reasonably foreseen that such **Pollution Condition** could have been expected to give rise to a **Claim**.

This exclusion does not apply to such **Pollution Conditions** which commenced during the term of a prior storage tank pollution liability policy issued by the Company or an insurance company which is a member company of American International Group, Inc. (hereinafter "affiliate"), provided that:

1. The **Insured** has maintained storage tank pollution liability insurance with the Company or its affiliate on a successive and uninterrupted basis for the periods succeeding the **Pollution Condition**; and

2. The **Insured** made full and complete disclosure of such **Pollution Condition** on each renewal application for storage tank pollution liability insurance with the Company or its affiliate.

However, none of the preceding provisions (i) shall restrict or prevent the Company from exercising its right to cancel or nonrenew either this Policy or the coverage for a particular **Aboveground Storage Tank** or **Underground Storage Tank System** designated in Item 6 of the Declarations; or (ii) shall be deemed to reinstate or increase any of the limits of liability shown in Item 3 of the Declarations.

**B.** For any punitive, exemplary or multiplied damages or statutory assessments, or any civil, administrative or criminal fines or penalties.

56101 (8/09)
CI4144

© 2001 All rights reserved

**C.** Arising from **Pollution Conditions** based upon or attributable to the **Insured's** intentional, knowing, willful or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body.

**D.** Arising out of the ownership, maintenance, use, operation, loading or unloading of any aircraft, watercraft, rolling stock, or automobile or any other land motor vehicle, trailer or semi-trailer designed for travel on public roads including any machinery or apparatus attached thereto.

**E.** For costs, charges or expenses incurred by the **Insured** for goods supplied by the **Insured** or services performed by the staff and/or salaried employees of the **Insured**, or its parent, subsidiary or affiliate, unless such costs, charges or expenses are incurred with the prior written approval of the Company at its sole discretion.

**F.** Arising from any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot or civil commotion.

**G.** Under **Coverage B** or **Coverage C**:

    1. For any costs arising out of the reconstruction, repair, replacement, upgrading or rebuilding of any **Aboveground Storage Tank** or **Underground Storage Tank System** or any other improvements and any site enhancement or routine maintenance on, within, or under the locations designated in Item 5 of the Declarations.

    2. For any costs arising out of the removing, replacing or recycling of the contents of any **Aboveground Storage Tank** or **Underground Storage Tank System**.

**H.** For any costs, charges or expenses incurred to investigate or verify that a **Confirmed Release** under **Coverage B** or a **Pollution Condition** under **Coverage C** has taken place.

**I.** Under **Coverage A**, due to **Bodily Injury** to an employee of the **Insured** or its parent, subsidiary or affiliate arising out of and in the course of employment by the **Insured** or its parent, subsidiary or affiliate.

This exclusion applies:

    1. Whether the **Insured** may be liable as an employer or in any other capacity; and

    2. To any obligation to share damages with or repay third parties who must pay damages because of the injury.

**J.** Under **Coverage A**, arising as a result of liability of others assumed by the **Insured** under any contract or agreement, unless the liability of the **Insured** would have attached in the absence of such contract or agreement.

**K.** Under **Coverage A**, arising from **Bodily Injury** or **Property Damage** on, within or under the location(s) designated in Item 5 of the Declarations, whether or not incurred in the course of avoiding or mitigating **Bodily Injury**, **Property Damage**, or costs for **Corrective Action** or **Cleanup** which may be covered under this Policy.

**L.** Under **Coverage A**, for **Property Damage** to goods or products manufactured, sold, handled or distributed by the **Insured** or its parent, subsidiary or affiliate arising out of such goods or products or any part thereof, or due to **Property Damage** to work performed by, or on behalf of the **Insured** or its parent, subsidiary or affiliate arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

**M.** Arising from **Pollution Conditions** on, within or under or **Emanating From** the locations designated in Item 5 of the Declarations, which commence subsequent to the time such locations are

56101 (8/09)
CI4144

© 2001 All rights reserved

CIC000116

1. Sold;

2. Given away;

3. Abandoned; or

4. Sub-leased, unless the sub-lease has been approved in writing by the underwriter prior to the commencement of the sub-lease.

N. 1. For **Bodily Injury**, **Property Damage**, **Corrective Action** or **Cleanup**

   (a) With respect to which an **Insured** under this Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) Resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which

      (i) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

      (ii) The **Insured** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   2. For **Bodily Injury**, **Property Damage**, **Corrective Action** or **Cleanup** resulting from the **Hazardous Properties** of **Nuclear Material**, if

      (a) The **Nuclear Material**

         (i) Is at any **Nuclear Facility** owned by, or operated by or on behalf of, an **Insured**, or

         (ii) Has been discharged or dispersed therefrom;

      (b) The **Nuclear Material** is contained in **Spent Fuel** or **Waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

      (c) The **Bodily Injury**, **Property Damage**, **Corrective Action** or **Cleanup** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to **Property Damage** to such **Nuclear Facility** and any property threat.

   3. As used in this exclusion:

      "**Hazardous Properties**" include radioactive, toxic or explosive properties;

      "**Nuclear Material**" means **Source Material**, **Special Nuclear Material** or **By-Product Material**;

      "**Source Material**," "**Special Nuclear Material**," and "**By-Product Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law, amendatory thereof;

      "**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**;

      "**Waste**" means any waste material

56101 (8/09)
CI4144

© 2001  All rights reserved

(a) containing **By-Product Material**; and

(b) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of **Nuclear Facility** under paragraph (a) or (b) thereof;

**"Nuclear Facility"** means

(a) Any **Nuclear Reactor**;

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **Spent Fuel**, or (3) handling, processing or packaging **Waste**;

(c) Any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at anytime the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Property Damage"** includes all forms of radioactive contamination of property.

**O.** Arising from the actual, alleged or threatened exposure of person(s) or property to any radioactive matter except where specifically endorsed onto this Policy.

## V. LIMIT OF LIABILITY AND DEDUCTIBLE

**A.** The Company's total liability:

1. For all **Losses** from **Claims** first made against the **Insured** and reported;

2. For all costs for **Corrective Action** from **Claims** first reported by or on behalf of the **Insured**; and

3. For all costs for **Cleanup** from **Governmental Orders** first made against the **Insured** and reported by or on behalf of the **Insured** as a **Claim**;

in writing to the Company during the **Policy Period** and including the Extended Reporting Period, if applicable, shall not exceed the limit of liability shown in Item 3 as applicable to the "Aggregate Limit". The purchase by the **Named Insured** of an Extended Reporting Period, pursuant to Section **V.** of this Policy, shall not serve to reinstate or increase the "Aggregate Limit" limit of liability.

**B.** Subject to Paragraph **A.** above, this Policy is to pay any **Loss**, or any costs as a result of any **Corrective Action** or **Cleanup**, in excess of the deductible amount shown in Item 4 of the Declarations, up to but not exceeding the limit of liability shown in Item 3 of the Declarations as applicable to the "Each Incident" limit of liability.

However, regardless of the number of **Claims**, claimants, or **Insureds**, the total liability of the Company for all **Claims**, during one or more policy periods, resulting either in **Loss**, or in costs for **Corrective Action** or **Cleanup**, or in any combination thereof, and arising out of the same, interrelated, associated,

56101 (8/09)
CI4144

© 2001 All rights reserved

repeated, or continuous **Pollution Conditions,** shall be considered one incident, subject to the "Each Incident" limit of liability and "Aggregate Defense Expense Limit" of liability shown in Item 3 of the Declarations of the policy in effect when the first such **Claim** was made and reported to the Company. Such **Claims** shall be deemed first reported to the Company during the policy period in which the first such **Claim** was first reported to the Company or an affiliate.

C.  The most the Company will pay in defending any one **Claim** and all **Claims** under Section **I. Coverage D - Defense,** is shown in Item 3 of the Declarations as applicable to the "Aggregate Defense Expense Limit". Each payment or reimbursement the Company makes in defending a **Claim** under Section **I. Coverage D - Defense,** reduces the "Aggregate Defense Expense Limit" but does not reduce the "Aggregate Limit".

D.  For each **Claim** under **Coverage A, Coverage B** or **Coverage C,** or under any combination of **Coverage A, Coverage B** and or **Coverage C,** one deductible amount as shown in Item 4 of the Declarations shall apply collectively both to the "Each Incident" limit of liability and to the "Aggregate Defense Expense Limit" which are shown in Item 3 of the Declarations. However, the deductible amount does not reduce either the "Each Incident" limit of liability or the "Aggregate Defense Expense Limit", unless the **Insured** fails to reimburse the deductible amount. Such costs within the deductible amount are to be assumed by the **Insured,** and any payment of such costs by the Company is subject to prompt reimbursement by the **Insured.**

## VI. EXTENDED REPORTING PERIOD

The **Named Insured** shall be entitled to purchase an Extended Reporting Period upon termination of coverage as defined herein.

A.  A **Claim** under **Coverage A** first made and reported, or a **Claim** under **Coverage B** or **Coverage C** first reported, within the Extended Reporting Period if purchased in accordance with the provisions contained in Paragraph B. of this Section, will be deemed to have been made and or reported on the last day of the **Policy Period,** provided that the **Claim** arises from a **Pollution Condition** that commenced on or after the Retroactive Date shown in Item 7 of the Declarations and before the end of the **Policy Period.**

B.  The Company shall issue an endorsement providing an Extended Reporting Period of 12 months from termination of coverage hereunder for all covered locations or any specific locations listed in Item 5 of the Declarations provided that the **Named Insured:**

1.  Makes a written request for such endorsement which the Company receives within 30 days after termination of coverage as defined herein; and

2.  Pays the additional premium when due. If that additional premium is paid when due, the Extended Reporting Period may not be cancelled, provided that all other terms and conditions of the Policy are met.

C.  Termination of coverage occurs:

1.  At the time of cancellation or nonrenewal of this Policy by the **Named Insured** or by the Company; or

2.  (a) At the time of the deletion of a location listed in Item 5 of the Declarations from this Policy by the Company; or

    (b) At the time a location listed in Item 5 of the Declarations is

       (i) Sold;

       (ii) Given away;

       (iii) Abandoned; or

56101 (8/09)
CI4144

© 2001 All rights reserved

CI000119

(iv) Sub-leased, unless the sub-lease has been approved in writing by the underwriter prior to the commencement of the sub-lease.

**D.** The Extended Reporting Period is available to the **Named Insured** for not more than 100% of the Policy premium.

**E.** The purchase of an Extended Reporting Period shall not serve to reinstate or increase the limit of liability shown in Item 3 of the Declarations as applicable to the "Aggregate Limit."

## VII. TERRITORY

This Policy only applies to **Claims** arising from **Pollution Conditions** in the United States, its territories or possessions or Canada and only if such **Claims** or the **Governmental Orders** are made, brought or issued in the United States, its territories or possessions or Canada.

## VIII. CONDITIONS

**A. Inspection and Audit** - The Company shall be permitted but not obligated to inspect, sample and monitor on a continuing basis the **Insured's** property or operations, at any time. Neither the Company's right to make inspections, sample and monitor, nor the actual undertaking thereof nor any report thereon, shall constitute an undertaking, on behalf of the **Insured** or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation. The Company does not manage or exercise control over any premises or any **Underground Storage Tank System** or **Aboveground Storage Tank**, nor is the Company in control of any source of a **Regulated Substance.**

**B. Cancellation** - This Policy may be cancelled by the **Named Insured** by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy, or the coverage afforded by this Policy with respect to a particular location or locations designated in Item 5 of the Declarations, may be cancelled by the Company by mailing to the **Named Insured** at the address shown in the Policy, written notice stating when not less than 60 days (not less than 10 days for nonpayment of premium or for misrepresentation by the **Insured**) thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period.** Delivery of such written notice either by the **Named Insured** or by the Company shall be equivalent to mailing.

If the **Named Insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**C. Representations** - By acceptance of this Policy, the **Insured** agrees that the statements in the Declarations and Application are their agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the **Insured** and the Company or any of its agents relating to this insurance.

**D. Action Against Company** - No action shall lie against the Company, unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the

56101 (8/09)
CI4144

© 2001 All rights reserved

Company be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

**E. Assignment** - This Policy shall not be assigned without the prior written consent of the Company. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed thereon.

**F. Subrogation** - In the event of any payment under this Policy, the Company shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after a **Claim** to prejudice such rights.

Any recovery as a result of subrogation proceedings arising out of a **Loss** or out of costs for **Corrective Action**, caused by **Pollution Conditions** under this Policy after expenses incurred in such subrogation proceeding are deducted by the party bearing the expense shall accrue to the **Insured** and the Company in proportion to each amount actually paid as a result of judgment, settlement or defense of a **Claim** for **Bodily Injury**, **Property Damage**, **Corrective Action**, or **Cleanup Costs**.

**G. Changes** - Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

**H. Sole Agent** - The **Named Insured** first listed in Item 1 of the Declarations shall act on behalf of all other **Insureds**, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in the Extended Reporting Period clause.

**I. Other Insurance** - Where other insurance is available to the **Named Insured** for **Losses** or for costs for **Corrective Actions** or **Cleanups** covered under the terms and conditions of the Policy, the Company's obligation to the **Insured** shall be as follows:

1. This insurance shall apply as excess insurance over any other valid insurance, whether collectible or not, be it primary or excess. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2. Where this insurance is excess insurance, the Company will pay only its share of the amount of **Loss** and costs for **Corrective Action** or **Cleanup**, if any, that exceeds the total amount of all such valid insurance, whether collectible or not.

The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable against the liability covered by this Policy.

**J. Regulatory Amendments** - References in this Policy to the Resource Conservation and Recovery Act of 1976, The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, applicable sections of the Code of Federal Regulations (the "federal regulations"), and any other **Environmental Laws** include any amendments to such statutes, regulations or **Environmental Laws**, promulgated subsequent to binder of coverage.

## IX. CHOICE OF LAW AND FORUM

In the event that the **Insured** and the Company dispute the meaning, interpretation or operation of any term, condition, definition or provision of this Policy resulting in litigation, arbitration or other form of dispute resolution, the **Insured** and the Company agree that the law of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

Arbitration:

56101 (8/09)
CI4144

© 2001  All rights reserved

1. Any disputes or difference which the **Insured** and the Company agree to resolve through arbitration shall be submitted to the decision of two arbitrators, one to be chosen by each party, and in the event of the arbitrators failing to agree, to the decision of any umpire to be chosen by the arbitrators. The arbitrators and umpire shall be disinterested, active or retired executive officials of fire or casualty insurance or reinsurance companies or Underwriters at Lloyd's of London. If either of the parties fails to appoint an arbitrator within one month after being requested by the other party in writing to do so, or if the arbitrators fail to appoint an umpire within one month of a request in writing by either of the to do so, such arbitrator or umpire, as the case may be, shall at the request of either party be appointed by a Justice of the Supreme Court of the State of New York.

2. The arbitration proceeding shall take place in New York, New York. The Applicant shall submit its case within one month after the appointment of the court of arbitration, and the respondent shall submit its reply within one month after the receipt of the claim. The arbitrators and umpire are relieved from all judicial formality and may abstain from following the strict rules of law. They shall settle any dispute under the Policy according to an equitable rather than a strictly legal interpretation of its terms.

3. Their written decision shall be provided to both parties and shall be final and not subject to appeal.

4. Each party shall bear the expenses of his arbitrator and shall jointly and equally share with the other the expenses of the umpire and of the arbitration.

5. This article shall survive the termination of the policy.

The remainder of this page has been intentionally left blank. Policy Signature Page shall immediately follow.

56101 (8/09)
CI4144

© 2001 All rights reserved

CIC000122

## NOTICE OF LOSS/NOTICE OF CLAIM

<u>INSTRUCTIONS:</u>  PLEASE ATTACH ALL CORRESPONDENCE RELATING TO THIS NOTICE OF LOSS AND MAIL COPIES OF THIS NOTICE TO EACH ADDRESS BELOW:

Manager, Pollution Insurance Products Dept.
AIG Property Casualty Claims, Inc
Attn.: CID
101 Hudson Street, 31st  Floor
Jersey City, NJ 07302
Fax:  866-260-0104
Email:  severityfnol@aig.com

Date of Notice:_____

**NAMED INSURED:** _____ Telephone: (     ) _____

_____ Contact: _____

**ADDRESS OF INSURED:** _____

_____

_____

_____

**BROKER NAME:** _____ Telephone: (     ) _____

_____ Contact: _____

**BROKER ADDRESS:** _____

_____

_____

**POLICY INFORMATION:**
Policy Number: _____

Policy Period: From: _____  To: _____

**Loss Information:**
Loss Location: _____

_____

Date & Description of Loss: _____

_____

_____

_____

_____

_____

_____

_____

_____

For AIG Use Only:

Date Claim Notice Received: _____

Date of Claim: _____

Company/Person Filing Suit (if applicable): _____

***NOTE:*** *Any person who knowingly files a Statement of Claim containing any false or misleading information is subject to criminal and civil penalties.*

91968 (12/06)
CI2940

PAGE 1 OF 1

**Gaining the Ultimate Value-Added Advantage through AIG Environmental**

Thank you for purchasing your environmental insurance policy through AIG Environmental. It is our goal to enhance the coverage of every environmental insurance policy by providing insureds exclusive access to market-leading tools and programs to help manage risk, mitigate environmental losses, conduct loss control, and optimize emergency response:

**PIER (Pollution Incident and Environmental Response)®**
Policyholders have access to a nationwide network of pre-screened emergency response contractors, environmental specialists, or crisis management firms who respond in a timely manner to environmental incidents at pre-negotiated rates, thus helping insureds to minimize or mitigate losses associated with such incidents. Environmental insurance policyholders are automatically enrolled in this program.
- We have the right resources to help you respond to an environmental incident—call 1-877-PIER NOW (743-7669) and speak with a representative or access our PIER mobile website at www.aig.com/pier from your mobile device.

**Claims Expertise**
Our environmental claims operation, with 60+ claims specialists, is the largest in the industry. The depth and breadth of our operation means we can devote expertise to environmental claims of all types.
- Report your claim by sending a fax to 866-260-0104, emailing SeverityFNOL@aig.com, or log onto our PIER mobile website at www.aig.com/pier, open the Claims accordion, click on Claims Form and follow the instructions.

**RiskTool Advantage®**
RiskTool Advantage® provides a unique web-based system that provides clients with access to training, best practices and more, to help improve risk management. The complimentary, web-based system provides:
- the ability to implement a company-wide training program for environmental, health and safety best practices
- create customized training videos using a smartphone or iPad and upload them into RiskTool Advantage® for use
- choose from a video library of over 100 titles, many available in languages other than English
- use mobile app to log into account remotely for access to training courses and videos
Register for RiskTool Advantage® by contacting a risk consulting representative.

**Transportation Loss Control**
We provide a number of transportation-related loss control programs for insureds that reinforce positive driving behavior and potential improvements in loss reduction. These programs include driver monitoring and mock Department of Transportation audits.
- To learn more, contact environmental@aig.com

AIG Environmental is committed to the achievement of effective risk management objectives for clients as well as providing them access to incident response assistance with a pollution-release event.

Named Insured:        G. Tyson Hopkins Assoc LLC DBA
                      Topsail Island Marina

Policy Number:        003033680

Effective 12:01 AM: 05/09/21

| Form Name | Form Number/ Edition Date |
|---|---|
| C&I Storage Tank 3rd Party Liability Decpage | 56100(04/09) |
| C&I Storage Tank 3rd Party Liability Policy | 56101(08/09) |
| Notice of Loss/Notice of Claim | 91968(12/06) CI2940 |
| Covered Locations UST and AST | 60298(05/94) |
| On-Site & Off-Site 3rd Party BI & PD Sch Locations | 62131(03/95) |
| Cross Liability Exclusion | 58052(07/93) |
| Independent Counsel | 59048(11/93) |
| VA Terrorism Excl-Certified and Non-Certified Act End. | 119075(01/15) |
| Gaining the Ultimate Value-Added Advantage Through AIG | 127135(11/17) |
| Economic Sanctions Endorsement | 89644(06/13) |
| Virginia Cancellation/NonRenewal Endorsement | 52172(10/15) |
| Virginia Storage Tank Program Amendatory | 60807(10/08) |

ENDORSEMENT

This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No: 003033680

Issued to:   G. Tyson Hopkins Assoc LLC DBA
             Topsail Island Marina

By: Commerce and Industry Insurance Company

<u>COVERED LOCATIONS UNDERGROUND STORAGE TANKS
AND ABOVEGROUND STORAGE TANKS</u>

It is hereby agreed that Item 5 of the Declarations, Covered Location(s),
and Item 6 of the Declarations, Covered Underground Storage System(s)
and/or Aboveground Storage Tank(s), shall include only the following:

| Location Address | UST/ AST | Capacity Gallons | Install Year | Retro Date |
|---|---|---|---|---|
| G. Tyson Hopkins Assoc LLC DBA Topsail Island Marina 412 Roland Ave Surf City,          NC 28445 | | | | |
| | AST | 20,000 | 2001 | 4/15/17 |

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature(in states where applicable)

## ENDORSEMENT

This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No.: 003033680

Issued to: G. Tyson Hopkins Assoc LLC DBA
          Topsail Island Marina
By: Commerce and Industry Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### CROSS LIABILITY EXCLUSION

It is hereby agreed that this insurance does not apply to any claims made by any Insured against any other person or entity who is also an Insured under this policy.

All other terms, conditions, and exclusions shall remain the same.

_____

**AUTHORIZED REPRESENTATIVE or**
**countersignature (in states where applicable)**

58052 (7/93)
C 10997

Page 1 of 1

This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No.: 003033680

Issued to: G. Tyson Hopkins Assoc LLC DBA
           Topsail Island Marina
By: Commerce and Industry Insurance Company

### ON-SITE AND OFF SITE THIRD PARTY BODILY INJURY AND PROPERTY DAMAGE COVERAGE FOR SCHEDULED LOCATIONS

In consideration of the premium charged, it is hereby agreed that the following changes are made to the Policy. Terms appearing in **boldface** type are defined in Section **III. DEFINITIONS,** of the policy.

1. The below-listed locations are included in Item 5 of the Declarations as covered locations, subject to the terms and conditions of this Endorsement. This endorsement applies only with respect to **Claims** for **Pollution Conditions Emanating From** the locations designated below:

   412 Roland Ave                     Surf City,              NC 28445

2. With respect to **Claims** for **Pollution Conditions Emanating From** the locations designated in Item 1. of this Endorsement, **Section I. INSURING AGREEMENT, COVERAGE A: THIRD PARTY BODILY INJURY AND PROPERTY DAMAGE,** is deleted and replaced with the following:

   **COVERAGE A: THIRD PARTY BODILY INJURY AND PROPERTY DAMAGE.** Subject to the applicable limits of liability and the deductible, the Company agrees to pay **Loss** on behalf of the **Insured** that the **Insured** is legally obligated to pay as a result of **Claims** first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or during the Extended Reporting Period if applicable, for **Pollution Conditions Emanating From** the locations designated in Item 5 of the Declarations which result in **Bodily Injury** or **Property Damage.** The **Pollution Conditions** must be unexpected and unintended from the standpoint of the **Insured** and must commence on or after the Retroactive Date shown in Item 7 of the Declarations.

3. With respect to **Claims** for **Pollution Conditions Emanating From** the locations designated in Item 1. of this Endorsement, Paragraph **K.** in **Section IV. EXCLUSIONS,** is deleted.

   Nothing in this Endorsement shall be deemed or construed to increase any of the limits of liability shown in Item 3 of the Declarations.

All other terms and conditions of the Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE or**
countersignature (in states where applicable)

62131 (3/95)
C11037

Page 1 of 1

ENDORSEMENT

```
This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No.:  003033680

Issued to: G. Tyson Hopkins Assoc LLC DBA
           Topsail Island Marina
By: Commerce and Industry Insurance Company
```

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>INDEPENDENT COUNSEL</u>

In the event the **Insured** is entitled by law to select independent counsel to defend the **Insured** at the Company's expense, the attorney fees and all other litigation expenses the Company must pay to that counsel are limited to the rates the Company actually pays to counsel the Company retains in the ordinary course of business in the defense of similar **claims** or suits in the community where the **claim** arose or is being defended.

Additionally, the Company may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency including experience in defending **claims** or suits similar to the one pending against the **Insured** and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, the **Insured** agrees that counsel will timely respond to the Company's requests for information regarding the **claim** or suit.

Furthermore, the **Insured** may at anytime, by its signed consent, freely and fully waive its right to select independent counsel.

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE** or
countersignature (in states where applicable)

59048 (11/93)
CI1001

Page 1 of 1

CIC000129

## POLICYHOLDER DISCLOSURE NOTICE OF
## TERRORISM RISK INSURANCE ACT (TRIA) COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act:* The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury— in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020 OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

Unless you, or your insurance broker on your behalf, **REJECTS** in writing to the Company Terrorism Coverage under the Terrorism Risk Insurance Act as amended, you will be covered for Terrorism as defined in the Act and your prospective premium for that coverage is based upon which coverage option you choose (Coverage options setting forth limits, policy term, etc. are set forth in the attached letter of indication).

```
Terrorism Act Premium:      134.00
```

_____   I hereby decline to purchase terrorism coverage for certified acts of terrorism.  I understand that I will have no coverage for losses resulting from certified acts of terrorism.

**Commerce and Industry Insurance Company**

**Return to: Chamber Insurance Agency LLC
20 Commerce Drive, 2nd Floor
Cranford, NJ 07016-3617**

_____
Policyholder/Applicant's Signature

_____
Policyholder/Applicant's Printed Name

_____
Date

```
Insured: G. Tyson Hopkins Assoc LLC DBA
         Topsail Island Marina
Policy#: 003033680
Effective Date:  5/09/21
```

121187 (01/16)
CI5974

CI000130

This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No.:  003033680

Issued to: G. Tyson Hopkins Assoc LLC DBA
           Topsail Island Marina
By: Commerce and Industry Insurance Company

## VIRGINIA TERRORISM EXCLUSION – CERTIFIED AND NON-CERTIFIED ACTS ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**I.  Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **certified act of terrorism** as defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 (hereinafter, "TRIA") regardless of any other cause or event contributing concurrently or in any sequence with a **certified act of terrorism.**

**Certified act of terrorism** means any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

**A.** to be an act of terrorism;

**B.** to be a violent act or an act that is dangerous to:

  **1.** human life;

  **2.** property; or

  **3.** infrastructure;

**C.** to have resulted in damage within the United States, or outside of the United States in the case of:

  **1.** an air carrier or vessel [described in TRIA]; or

  **2.** the premises of a United States mission; and

**D.** to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act shall be certified by the Secretary as an act of terrorism if property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

**II.  Non-Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **non-certified act of terrorism** regardless of any other cause or event contributing concurrently or in any sequence with a **non-certified act of terrorism.**

 ©2015 American International Group, Inc.
All Rights Reserved.

CC000131

**A.** **Non-certified act of terrorism** means any act that is not a **certified act of terrorism** as defined herein and:

    **1.** is a violent act or an act that is dangerous to human life, property or infrastructure; and

    **2.** is committed by an individual or individuals that appears to be a part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion.

**B.** However, the exclusion provided under Subsection **II.A.** only applies when one or more of the following are attributed to an incident of a **non-certified act of terrorism.**

    **1.** The **non-certified act of terrorism** involves the use, release, escape, dispersal and/or application of:

        **a.** Any nuclear reaction;

        **b.** Radioactive materials or **nuclear materials;**

        **c.** Radionuclides; and/or

        **d.** Radiation emitted from any radioactive source; or

    **2.** The **non-certified act of terrorism** involves the use, release, escape, dispersal, and/or application of pathogenic or poisonous chemical or **biological** materials; or

    **3.** The total insured industry-wide losses exceed $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the Company will include all insured industry-wide loss or damage sustained by all persons and entities affected by the **non-certified act of terrorism.** For the purpose of this provision, insured industry-wide loss or damage means loss or damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

    Multiple incidents of **non-certified acts of terrorism** which occur within a 72-hour period and objectively appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in this Subsection **II.B.3.** are met.

    **4.** With respect to commercial liability policies, fifty or more persons sustain death or serious physical injury. For purposes of this provision, serious physical injury means:

        **a.** Physical injury that involves substantial risk of death; or

        **b.** Protracted and obvious physical disfigurement; or

        **c.** Protracted loss of or impairment of the function of a bodily member or organ.

**III.** With respect to commercial property policies:

**A.** If a **certified act of terrorism** results in an ensuing fire to covered property insured hereunder located in Virginia, this Policy does not cover such loss or damage caused by such ensuing fire. Further, if a **certified act of terrorism** results in an ensuing fire to covered property insured hereunder located outside of Virginia, but within another state of the United States, the District of Columbia, Puerto Rico, or a territory or possession of the United States, such loss or damage caused by such ensuing fire is also excluded, **but only if** not prohibited by applicable statute, regulation or other law. To the extent that ensuing fire cannot be

 ©2015 American International Group, Inc.
All Rights Reserved.

Case 7:24-cv-00584-FL    Document 24-5    Filed 06/06/25    Page 25 of 40    C000132

excluded for covered property outside of Virginia, such coverage for fire following a **certified act of terrorism** applies only to direct physical loss or damage to covered property insured hereunder, and to no other coverage provided by the Policy.

B. If a **non-certified act of terrorism** results in an ensuing fire to covered property insured hereunder located in Virginia, this Policy covers such loss or damage caused by such ensuing fire, subject to the Policy's terms and conditions. However, if a **non-certified act of terrorism** results in an ensuing fire to covered property insured hereunder located outside of Virginia, but within another state of the United States, the District of Columbia, Puerto Rico, or a territory or possession of the United States, such loss or damage caused by such ensuing fire is excluded, **but only if** not prohibited by applicable statute, regulation or other law. To the extent that ensuing fire cannot be excluded pursuant to this Subsection **III.B.**, such coverage for fire following a **non-certified act of terrorism** applies only to direct physical loss or damage to covered property insured hereunder, and to no other coverage provided by the Policy.

C. Notwithstanding Subsections **III.A.** and/or **III.B.** above, to the extent not prohibited by the law of the jurisdiction to which this Policy is subject, this Policy does not cover fire following a **certified act of terrorism** or **non-certified act of terrorism** that involves the use, release, escape, dispersal and/or application of any nuclear reaction; radioactive materials or **nuclear materials**; radionuclides; radiation emitted from any radioactive source; and/or pathogenic or poisonous chemical or **biological** materials.

D. Notwithstanding any other valuation provision of this Policy to the contrary, any covered property insured hereunder that sustains loss or damage due to fire following a **certified act of terrorism** or **non-certified act of terrorism**, covered pursuant to Subsection **III.A.** and/or **III.B.** above, shall be valued at Actual Cash Value at the time and place of the loss.

## IV. Application of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Policy, such as losses excluded by a nuclear exclusion, pollution exclusion or war exclusion.

## V. Definitions: The following definitions apply to this endorsement:

A. **Nuclear materials** means **source material**, **special nuclear material** or **by-product material**. **Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

B. **Biological** materials include all microorganisms, viruses, rickettsia, prions, nucleic acids, toxins, toxin-producing agents, and poisons produced by biological organisms.

All other terms and conditions of the Policy remain the same.

Authorized Representative

This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No.:  003033680

Issued to: G. Tyson Hopkins Assoc LLC DBA
            Topsail Island Marina
By: Commerce and Industry Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ECONOMIC SANCTIONS ENDORSEMENT**

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

89644 (06/13)
CI

This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No.:  003033680

Issued to: G. Tyson Hopkins Assoc LLC DBA
           Topsail Island Marina
By: Commerce and Industry Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**VIRGINIA CANCELLATION AND NONRENEWAL ENDORSEMENT**

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Named Corporation, Named Organization, Named Sponsor, Named Insured, First Named Insured or Insured stated in the declarations page.

In consideration of the premium charged, it is hereby understood and agreed the cancellation and renewal provision of this policy is deleted in its entirety and replaced by the following:

This policy may be cancelled by the named Insured by surrender of this policy to the Insurer or by giving written notice to the Insurer when thereafter such cancellation shall be effective. This policy may also be cancelled or nonrenewed by the Insurer by delivering or mailing to the named Insured written notice stating when not less than forty-five (45) days (ninety (90) days for medical malpractice policies) thereafter (fifteen (15) days thereafter if cancellation is for failure to pay premium when due) the cancellation or nonrenewal shall be effective. If the policy shall be cancelled by the Insurer, the refund shall be pro rata. If this policy shall be cancelled by the Insured, the refund shall be 90% pro rata of the premium.

Notice by the Insurer shall state the reason(s) for cancellation or nonrenewal and shall advise the Insured of the right to request in writing, within 15 days of the receipt of notice that the Commissioner of Insurance review the action of the Insurer. If notice of cancellation or nonrenewal is mailed by the Insurer it shall be sent by:

1.  (a)  registered or certified mail, or
    (b)  any other similar first class mail tracking method used or approved by the United States Postal Service (USPS); or
    (c)  electronic mail as long as the insurer retains evidence of electronic transmittal or receipt of the notification for at least one year from the date of the transmittal.

2.  The Insurer shall retain a duplicate copy of the notice of cancellation or refusal to renew for at least one year.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

52172 (10/15)
CI6262

**ENDORSEMENT NO.**

This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No.:  003033680

Issued to: G. Tyson Hopkins Assoc LLC DBA
           Topsail Island Marina
By: Commerce and Industry Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**VIRGINIA STORAGE TANK PROGRAM
AMENDATORY ENDORSEMENT**

You have purchased a claims-made liability insurance policy.  Please read this Policy carefully to understand your coverage.   There are certain circumstances in which you must be provided the opportunity to purchase an extended reporting period for reporting claims.   These are explained in your policy.   If you have any questions regarding the cost of an extended reporting period or the available options under the extended reporting period, please contact your insurance company or your insurance agent.

1.  It is hereby agreed that Section **III. DEFINITIONS**, Paragraph **N.**, **Policy Period**, is deleted in its entirety and replaced with the following:

    **N.  Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of:

    1.  Cancellation of this Policy; or

    2.  With respect to particular locations designated in Item 5 of the Declarations:

        The deletion of such location(s) from this Policy at the **Insured's** request; or

        (a) The sale, giving away or abandonment of such location(s), or the sub-leasing of such location(s), unless the sub-lease has been approved in writing by the underwriter prior to the commencement of the sub-lease.

2.  It is hereby agreed that the last paragraph of Section **IV. EXCLUSIONS**, Paragraph **A.**, is deleted in its entirety and replaced with the following:

    **A.**  However, none of the preceding provisions (i) shall restrict or prevent the Company from exercising its right to cancel or nonrenew this Policy; or (ii) shall be deemed to reinstate or increase any of the limits of liability shown in Item 3 of the Declarations.

3.  It is hereby agreed that Section **V. LIMIT OF LIABILITY AND DEDUCTIBLE**, Paragraphs **C.** and **D.**, are deleted in their entirety and replaced with the following:

    **C.**  The most the Company will pay in defending any one **Claim** and all **Claims** under Section **I. Coverage D - Defense**, is shown in Item 3 of the Declarations as applicable to the "Aggregate Defense Expense Limit".   The Company shall provide defense coverage of up to 100% of the "Aggregate Limit".   Each payment or reimbursement the Company makes in defending a **Claim** under Section **I. Coverage D - Defense,** reduces the "Aggregate Defense Expense Limit" but does not reduce the "**Aggregate Limit**".

    **D.**  For each **Claim** under **Coverage A, Coverage B or Coverage C,** or under any combination of **Coverage A, Coverage B** and or **Coverage C,** one deductible amount as shown in Item 4 of the Declarations shall apply collectively both to the "Each Incident" limit of liability and to the "Aggregate Defense Expense Limit" which are shown in Item 3 of the Declarations.   However, the deductible amount does not reduce either the "Each Incident" limit of liability or the "Aggregate Defense Expense Limit".   Such

60807 (10/08)                                    1

costs within the deductible amount are to be assumed by the **Insured,** and any payment of such costs by the Company is subject to prompt reimbursement by the **Insured.**

4.  It is hereby agreed that the first Paragraph of Section **VI. EXTENDED REPORTING PERIOD,** Paragraphs **B., C.** and **D.** of Section **VI. EXTENDED REPORTING PERIOD** are deleted in their entirety and replaced with the following:

The **Named Insured** shall be entitled to purchase an Extended Reporting Period upon termination of coverage as defined herein. The **Named Insured** shall receive an Automatic Extended Reporting Period of fifteen (15) days upon termination of coverage. The Automatic Extended Reporting Period shall end after the fifteen day period or upon the **Named Insured's** purchase of the Extended Reporting Period. All provisions of this Section **VI.** regarding the Extended Reporting Period shall also apply to the Automatic Extended Reporting Period. The Extended Reporting Period shall also be offered for advancement of the retroactive date or renewal on other than a claims made basis.

**B.** The company shall issue an endorsement providing an Extended Reporting Period of up to 24 months from termination of coverage hereunder for all covered locations or any specific locations listed in Item 5 of the Declarations provided that the **Named Insured:**

   1.  Makes a written request for such endorsement which the Company receives within 30 days after termination of coverage as defined herein; and
   2.  Pays the additional premium when due. If that additional premium is paid when due, the Extended Reporting Period may not be cancelled, provided that all other terms and conditions of the Policy are met.

**C.** Termination of coverage occurs:

   1.  At the time of cancellation or nonrenewal of this Policy by the **Named Insured** or by the Company; or

   2.  (a) At the time of the deletion of a location listed in Item 5 of the Declarations from this Policy
       at the **Insured's** request; or

       (b) At the time a location listed in Item 5 of the Declarations is:

           (i)   Sold;

           (ii)  Given away;

           (iii) Abandoned; or

           (iv)  Sub-leased, unless the sub-lease has been approved in writing by the underwriter prior to the commencement of the sub-lease.

**D.** The Extended Reporting Period is available to the **Named Insured** for not more than 75% of the full Policy premium.

5.  It is hereby agreed that Section **VIII. CONDITIONS,** Paragraph **H., Sole Agent,** is deleted in its entirety and replaced with the following:

**H.  Sole Agent** - The **Named Insureds** listed in Item 1 of the Declarations shall act on behalf of all other **Insureds,** if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, and the exercise of the rights provided in the Extended Reporting Period clause.

6.  It is hereby agreed that Section **IX. CHOICE OF LAW AND FORUM,** is hereby deleted in its entirety.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

60807 (10/08)                                        2

ACIC000137

**VIRGINIA NOTICE – VIOLATION OF ECONOMIC OR TRADE SANCTIONS**

This notice is to advise you that payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**POLICY SIGNATURE PAGE**

This Policy Signature Page,

forms a part of Policy No:     003033680

IN WITNESS WHEREOF, the Insurer has caused this policy to be signed by its President, Secretary and Authorized Representative.

Secretary
Commerce and Industry Insurance Company

President
Commerce and Industry Insurance Company

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either below or on the Declarations page of the Policy.

Authorized Representative

86697 (9/04)
CI2469



## Storage Tank Third Party Liability

## TankGuard ® Renewal Warranty

```
NAMED INSURED: G. Tyson Hopkins Assoc LLC DBA
               Topsail Island Marina
INSURER:       Commerce and Industry Insurance Company
POLICY NUMBER: PLC003033680
POLICY PERIOD: 5/09/21 - 05/09/22
```

---

The undersigned warrants and represents that there have been no changes to the schedule of covered tanks or locations:

THIS RENEWAL WARRANTY DOES NOT BIND THE APPLICANT TO BUY, OR THE COMPANY TO ISSUE THE INSURANCE, BUT IT IS AGREED THAT THIS FORM SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED, AND IT WILL BE ATTACHED TO THE ORIGINAL APPLICATION AND MADE A PART OF THE POLICY. THE UNDERSIGNED APPLICANT DECLARES, WARRANTS AND REPRESENTS THAT THE STATEMENTS SET FORTH IN THIS WARRANTY ARE TRUE AND THAT NO MATERIAL FACTS HAVE BEEN SUPPRESSED OR MISSTATED. THE APPLICANT FURTHER DECLARES, WARRANTS AND REPRESENTS THAT IF THE INFORMATION SUPPLIED ON THIS WARRANTY CHANGES BETWEEN THE EXECUTION DATE OF THE WARRANTY AND THE RENEWAL POLICY EFFECTIVE DATE, THE APPLICANT WILL IMMEDIATELY NOTIFY THE COMPANY OF SUCH CHANGES, AND THE COMPANY MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATION TO BIND THE INSURANCE.

ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE COMPANY IN CONJUNCTION WITH THE MOST RECENT LONG FORM APPLICATION AS WELL AS THE RENEWAL WARRANTY SIGNED HEREUNDER ARE INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART THEREOF.

In the event that the company issues a policy, the undersigned acting on behalf of the applicant and all proposed insureds, acknowledges that the company, in providing coverage, will have relied upon, as representations, the declarations and statements which are contained in or attached to or incorporated by reference into this warranty and which are incorporated into the policy.

**If the insured would like an indication for higher limits, please indicate.**

**LIMITS DESIRED:** (each incident/aggregate)

☑ $1 million/$1 million    ☐ $1 million/$ 2 million    ☐ $2 million/$2 million

☐ OTHER: _____

**DEDUCTIBLE DESIRED:** (each incident)

☑ $5,000    ☐ $10,000    ☐ $25,000    ☐ $50,000    ☐ $100,000

For Deductibles above $50,000, please include your most current audited financial statement.



## Renewal Warranty Acknowledgement

APPLICANT: *Mary H. Cross*
 <span style="font-size:small">(Signature)</span>

APPLICANT: G. Tyson Hopkins Assoc LLC DBA
Topsail Island Marina
 <span style="font-size:small">(Print Name)</span>

DATE: 2/21/2021

BROKER: Ocean Marine Insurance Agency, Inc
 <span style="font-size:small">(Firm)</span>

11541 Shipwatch Drive #1010
Largo,          FL  33774-
 <span style="font-size:small">(Street Mailing Address)</span>

Ms. Linda Reed
 <span style="font-size:small">(Contact person)</span>

*reed.linda.j@gmail.com*
 <span style="font-size:small">(Phone #, Fax #, Email Address)</span>

*Don Sanger*
 <span style="font-size:small">(Signature of Broker or Agent)</span>

A232897
 <span style="font-size:small">(License Number and State)</span>

██████ 1714
 <span style="font-size:small">(Tax I.D. #)</span>

Please note that if you are planning on adding either additional tanks or locations to this policy, the Company requires that we first receive a fully completed renewal application within thirty (30) days of the policy expirations expiration date. Please visit our website www.chamberagent.com to download to application.

NOTICE TO APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

C000141

91177 (03/17)

## POLICYHOLDER DISCLOSURE NOTICE OF
## TERRORISM RISK INSURANCE ACT (TRIA) COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act:* The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020 OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

Unless you, or your insurance broker on your behalf, **REJECTS** in writing to the Company Terrorism Coverage under the Terrorism Risk Insurance Act as amended, you will be covered for Terrorism as defined in the Act and your prospective premium for that coverage is based upon which coverage option you choose (Coverage options setting forth limits, policy term, etc. are set forth in the attached letter of indication).

<pre>
        Terrorism Act Premium:        $134
</pre>

✓  I hereby decline to purchase terrorism coverage for certified acts of terrorism.  I understand that I will have no coverage for losses resulting from certified acts of terrorism.

*Mary H. Or~*
Policyholder/Applicant's Signature

*Mary H. Cregger*
Policyholder/Applicant's Printed Name

2/21/2021
Date

Commerce and Industry Insurance Company

Return to: Chamber Insurance Agency LLC
20 Commerce Drive, 2nd Floor
Cranford, NJ 07016-3617

```
G. Tyson Hopkins Assoc LLC DBA
Topsail Island Marina
Pol#:    003033680
Quote#:  108850
```

121187 (01/16)
CI5974

PAGE 1 OF 1

Name:               G. Tyson Hopkins Assoc LLC DBA
                    Topsail Island Marina
Address:            See Schedule Below


Policy Number:      003033680

Endorsement:        Not Applicable

Period of Coverage: From 05/09/21 To 05/09/22

Name Of Insurer:    Commerce and Industry Insurance Company
Address Of Insurer: 175 Water Street
                    New York, NY   10038

Name Of Insured:    G. Tyson Hopkins Assoc LLC DBA
                    Topsail Island Marina

Address Of Insured: 5619 33rd Street North
                    Arlington, VA 22207

CERTIFICATION:

1. COMMERCE & INDUSTRY INSURANCE COMPANY, the "Insurer", as identified
above, hereby certifies that it has issued liability insurance covering
the following underground storage tank(s) in connection with the insured's
obligation to demonstrate financial responsibility under the Virginia
Petroleum Underground Storage Tank Financial Requirements Regulation
(9 VAC 25-590-10 et seq.)

See Attached Location and Tank Schedule(s)

for "taking corrective action" and/or "compensating third parties for
bodily injury and property damage caused by" either "sudden accidental
releases" or "nonsudden accidental releases" or "accidental releases"
in accordance with and subject to the limits of liability, exclusions,
conditions, and other terms of the policy; arising from operating the
underground storage tank(s) identified above.

The limits of liability are $ 1,000,000 "each occurrence" and $ 1,000,000
annual aggregate exclusive of legal defense costs which are subject to a
separate limit under the policy.  This coverage is provided under
003033680.  The effective date of said policy is 05/09/21.

2. The Insurer further certifies the following with respect to the
insurance described in Paragraph 1:

    a.  Bankruptcy or insolvency of the Insured shall not relieve the
        Insurer of its obligations under the policy to which this
        certificate applies.

    b.  The Insurer is liable for the payment of amounts within any
        deductible applicable to the policy to the provider of corrective
        action or a damaged third-party, with a right of reimbursement by
        the insured for any such payment made by the Insurer.  This
        provision does not apply with respect to that amount of any
        deductible for which coverage is demonstrated under another
        mechanism or combination of mechanisms as specified in
        9 VAC 25-590-60 through 9 VAC 25-590-110.

101313(9/09)                      1

c. Whenever requested by the State Water Control Board, the Insurer agrees to furnish to the State Water Control Board a signed duplicate original of the policy and all endorsements.

d. Cancellation or any other termination of the insurance by the Insurer, except for non-payment of premium or misrepresentation by the Insured, will be effective only upon written notice and only after the expiration of sixty(60) days after a copy of such written notice is received by the Insured and the State Water Control Board. Cancellation for non-payment of premium or mis-representation by the insured will be effective only upon written notice and only after expiration of a minimum of 15 days after a copy of such written notice is received by the insured and the State Water Control Board.

e. The insurance covers claims otherwise covered by the policy that are reported to the Insurer within six months of the effective date of cancellation or non-renewal of the policy except where the new or renewed policy has the same retroactive date or a retroactive date earlier than that of the prior policy, and which arise out of any covered occurrence that commenced after the policy retroactive date, if applicable, and prior to such policy renewal or termination date. Claims reported during such extendd reporting period are subject to the terms , conditions, limits, including limits of liability and exclusions of the policy.

I hereby certify that the wording of this instrument is identical to the wording in APPENDIX IV of 9 VAC 25-590-10 et seq. and that the insurer is licensed to transact the business of insurance, or eligible to provide insurence as a excess or approved surplus lines insurer, in the Common-wealth of Virginia.

_Signature_

Signature of Authorized Representative of Insurer
Michael J. Andersen
Agency President

Authorized Representative of Commerce & Industry Insurance Company

Chamber Insurance Agency Services
20 Commerce Drive, 2nd Fl., Cranford, NJ 07016
101313(9/09)                    2

CC000144

Name:                    G. Tyson Hopkins Assoc LLC DBA
                         Topsail Island Marina
Address:                 See Schedule Below


Policy Number:           003033680

Endorsement:             Not Applicable

Period of Coverage:      From 05/09/21 To 05/09/22

Name Of Insurer:         Commerce and Industry Insurance Company
Address Of Insurer:      175 Water Street
                         New York, NY   10038

Name Of Insured:         G. Tyson Hopkins Assoc LLC DBA
                         Topsail Island Marina

Address Of Insured:      5619 33rd Street North
                         Arlington, VA 22207

CERTIFICATION:

1. COMMERCE & INDUSTRY INSURANCE COMPANY, the Insurer, as identified
above, hereby certifies that it has issued liability insurance covering
the following underground storage tank(s):

See Attached Location and Tank Schedule(s)

for taking corrective action and compensating third parties for bodily
injury and property damage caused by accidental releases, in accordance
with and subject to the limits of liability, exclusions, conditions and
other terms of the policy arising from operating the underground storage
tank(s) identified above.

The limits of liability are $ 1,000,000 each occurrence and $ 1,000,000
annual aggregate exclusive of legal defense costs which are subject to a
separate limit under the policy.  This coverage is provided under
003033680.  The effective date of said policy is 05/09/21.

2. The Insurer further certifies the following with respect to the
insurance described in Paragraph 1:

   a.  Bankruptcy or insolvency of the Insured shall not relieve the
       Insurer of its obligations under the policy to which this
       certificate applies.

   b.  The Insurer is liable for the payment of amounts within any
       deductible applicable to the policy to the provider of corrective
       action or a damaged third-party, with a right of reimbursement by
       the insured for any such payment made by the Insurer.  This
       provision does not apply with respect to that amount of any
       deductible for which coverage is demonstrated under another
       mechanism or combination of mechanisms as specified in
       40 CFR 280.95-280.102 and 280.104-280.107.

127124(10/17)                         1

C000145

c. Whenever requested by a Director of an implementing agency, the Insurer agrees to furnish to the Director a signed duplicate original of the policy and all endorsements.

d. Cancellation or any other termination of the insurance by the Insurer, except for non-payment of premium or misrepresentation by the Insured, will be effective only upon written notice and only after the expiration of sixty(60) days after a copy of such written notice is received by the Insured. Cancellation for non-payment of premium or misrepresentation by the Insured will be effective only upon written notice and only after expiration of a minimum of ten(10) days after a copy of such written notice is received by the Insured.

e. The insurance covers claims otherwise covered by the policy that are reported to the Insurer within six months of the effective date of cancellation or non-renewal of the policy except where the new or renewed policy has the same retroactive date or a retroactive date earlier than that of the prior policy, and which arise out of any covered occurrence that commenced after the policy retroactive date, if applicable, and prior to such policy renewal or termination date. Claims reported during such extendd reporting period are subject to the terms , conditions, limits, including limits of liability and exclusions of the policy.

I hereby certify that the wording of this instrument is identical to the wording in 40 CFR 280.97(b)(2) and that the Insurer is licensed to transact the business of insurance in one or more states.

_____
Signature of Authorized Representative of Insurer
Michael J. Andersen
Agency President

Authorized Representative of Commerce & Industry Insurance Company

Chamber Insurance Agency Services
20 Commerce Drive, 2nd Fl., Cranford, NJ 07016
127124(10/17)                  2

C000146

ENDORSEMENT

This endorsement, effective 12:01 AM, 05/09/21

Forms a part of Policy No: 003033680

Issued to:   G. Tyson Hopkins Assoc LLC DBA
             Topsail Island Marina

By: Commerce and Industry Insurance Company

## COVERED LOCATIONS UNDERGROUND STORAGE TANKS
## AND ABOVEGROUND STORAGE TANKS

It is hereby agreed that Item 5 of the Declarations, Covered Location(s), and Item 6 of the Declarations, Covered Underground Storage System(s) and/or Aboveground Storage Tank(s), shall include only the following:

| Location Address | UST/ AST | Capacity Gallons | Install Year | Retro Date |
|---|---|---|---|---|
| G. Tyson Hopkins Assoc LLC DBA Topsail Island Marina 412 Roland Ave Surf City,           NC 28445 Location ID#: 0     #Of USTs:  001 | | | | |
| | AST | 20,000 | 2001 | 4/15/17 |

All other terms, conditions, and exclusions shall remain the same.

*[signature]*
_____
                AUTHORIZED REPRESENTATIVE
      or countersignature(in states where applicable)